# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

**UNITED STATES OF AMERICA,**

        **Plaintiff,**

-v-

**RONNIE D. BROWN,**

        **Defendant.**

Case No. 3:11-cr-173

Judge Thomas M. Rose

---

**ENTRY AND ORDER OVERRULING BROWN'S MOTION TO SUPPRESS (Doc. #28)**

---

On January 11, 2012, a federal Grand Jury returned a two-count Superceding Indictment charging Defendant Ronnie D. Brown ("Brown") with possession with intent to distribute a controlled substance and possession of a firearm. On February 1, 2012, Brown filed a Motion To Suppress any and all evidence obtained from the warrantless search of his vehicle and any statements that he may have made. (Doc. #28.)

An evidentiary hearing on Brown's Motion To Suppress was conducted on February 23, 2012. (Doc. #30.) The Jury Trial of this matter is set for June 11, 2012.

At the end of the evidentiary hearing, the Court established a briefing schedule requiring Brown to file a memorandum in support of his Motion by March 27, 2012, the Government to respond by April 16, 2012 and Brown to reply by April 26, 2012. On April 5, 2012, Brown sought an extension of time to file his memorandum in support. (Doc. #32.) Brown's Motion for Extension of Time was granted and the briefing dates were then reset. Brown was given until April 20, 2012 to file his memorandum in support, the Government was given until May 4, 2012, to respond and Brown was given until May 11, 2012, to reply. (Doc. #33.)

The time has run and Brown has not filed a memorandum in support or a reply. The Government has filed a response to Brown's original Motion To Suppress. (Doc. #35.) Brown's Motion To Suppress is, therefore, ripe for decision.

Findings of relevant facts will first be set forth. This will be followed by the relevant legal provisions and an analysis of Brown's Motion To Suppress.

## FINDINGS OF RELEVANT FACTS

At the outset of the hearing, both Parties agreed that no statements were made in this case. (February 22, 2012 Hearing Transcript ("Tr.") 3.) Thus, the Motion To Suppress involves only the search of the vehicle.

On July 28, 2011, at approximately 11:30 p.m., Detective Michael Baker ("Detective Baker") of the Dayton Police Department was driving southbound on Edwin C. Moses Boulevard. (Id. at 2-5.) He heard a large boom to his left. (Id.) He immediately stopped and observed a "big cloud of dust and debris flying in the air." (Id.) He then made a U-turn and observed a black Escalade, which had apparently struck a tree, lying on its passenger side in the northbound lane of Edwin C. Moses Boulevard. (Id. at 5-6.) He notified Dispatch of the accident and told them to send medics. (Id.)

Detective Baker then exited his vehicle and approached the Escalade. (Id. at 6.) He observed one male occupant (later identified as Brown) through the front windshield. (Id.) The male occupant was, according to Detective Baker, unconscious at the time. (Id.) The occupant was positioned on his back against the passenger side window. (Id. at 13.) Detective Baker waited until the medic and fire trucks arrived and then left the scene. (Id. at 12.)

Company 13 of the Dayton Fire Department ("DFD") responded to the location of the

accident. (Id. at 15-16.) Michael Overman ("Overman"), a DFD firefighter/paramedic, and his partner were among the first to arrive. (Id. at 15-17.) Overman observed a dark SUV rolled onto its passenger side with Brown lying inside against the passenger side window. (Id. at 18-19.) Brown was conscious but not responding to questions. (Id.)

Overman then broke out the rear window and climbed inside to assess Brown's condition. (Id. at 19-20.) After making a visual assessment of Brown's condition, Overman placed a C-collar on Brown. (Id. at 20.) Overman then covered himself and Brown with a blanket as additional firemen cut out the front windshield in order to remove Brown for medical transport. (Id. at 20-21.)

As Brown was being removed from the Escalade, Overman, while still in the Escalade, glanced down and observed a gun pointing at him from where Brown had been lying. (Id. at 21-24.) Overman reported the presence of the gun to the first police officer that he saw on the scene. (Id. at 24.)

DPD Officer Joseph Heyob ("Officer Heyob"), while on duty and in uniform, was the first police officer to arrive at the scene of the accident. (Id. at 34-37.) As Officer Heyob witnessed the paramedics removing Brown from the Escalade, he observed Brown's body shifting and noticed a "small baggy of what appeared to be suspected drugs fall from between [Brown's] person and the backboard…." (Id. at 38-39, 60-61.) Officer Heyob confirmed that when Overman exited the vehicle, Overman pointed out the firearm to Officer Heyob. (Id. at 39-40.)

Officer Heyob then advised DPD Officer Erica Cash ("Officer Cash") of the firearm and the baggy and asked her to maintain control of them until an evidence crew arrived. (Id. at 40-

41.) After the evidence crew had arrived and documented the location of the firearm and baggy, Officer Heyob entered the vehicle and secured the firearm and baggy. (Id. at 42-43.)

In addition to the firearm and baggy, the evidence crew and Officer Heyob observed two bags of suspected heroin in plain view, one bag was laying by the passenger side front window and the other was located on the passenger side front door near the door handle. (Id. at 44, 51, 62.) Further, the firearm was "loaded in the magazine" and the magazine contained 14 live rounds. (Id. at 42.)

Following the collection of evidence, Officer Heyob requested a tow truck for the Escalade. (Id. at 43-44.) DPD policy permitted the Escalade to be towed for at least three reasons: obstruction of the roadway, for safe-keeping and for suspected drug and handgun crimes. (Id. at 43-44.) Regardless of the reason for towing, the requesting officer, Officer Heyob in this case, was required to conduct an inventory search prior to the vehicle being towed. (Id. at 43-45.)

## RELEVANT LEGAL PROVISIONS

### Warrantless Seizures

The Fourth Amendment forbids unreasonable searches and seizures. *Whren v. U.S.*, 517 U.S. 806, 809 (1996). However, warrantless searches and seizures are valid under certain circumstances. *United States v. Edwards*, 415 U.S. 800, 802 (1974).

One such circumstance is the search of an automobile when officers have probable cause to believe that the automobile contains contraband. *Florida v. White*, 526 U.S. 559, 563-64 (1999). The Fourth Amendment does not require the officers to obtain a search warrant prior to searching the automobile and seizing the contraband. *Id.*

Another such circumstance is termed the "plain view doctrine." *United States v. Herndon*, 501 F.3d 683, 692 (6th Cir. 2007). Pursuant to the "plain view doctrine," if a police officer is lawfully positioned in a place from which the object in question can be plainly viewed, the incriminating character of the object is immediately apparent and the officer has a lawful right of access to the object, the object may be seized without a warrant. *Id.*(citing *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993).

**Vehicle Inventory and Impoundment**

Automobiles are frequently taken into police custody. *South Dakota v. Opperman*, 428 U.S. 364, 368 (1976). Vehicle accidents provide one such instance where automobiles are taken into police custody. *Id.* Vehicles are often removed from roadways to permit the uninterrupted flow of traffic and, in some circumstances, to preserve evidence. *Id.* Automobiles which violate parking ordinances are also frequently removed from roadways. *Id.* at 369. Thus, police do not violate constitutional rights and are authorized to seize and remove vehicles that are impeding traffic flow or threatening public safety from roadways. *Id.*

Before vehicles are removed from roadways, vehicle inventories are many times taken. Vehicle inventory searches are also a circumstance permitting warrantless searches and seizures. *Florida v. Wells*, 495 U.S. 1, 4 (1990). Vehicle inventory searches protect an owner's property while it is in the custody of the police, insure against claims of lost, stolen or vandalized property and protect the police from danger. *Id.*

**ANALYSIS**

Officer Heyob observed the baggy drop in plain view while lawfully standing outside the Escalade, the incriminating nature of the baggy was apparent and Officer Heyob had lawful

access to the interior of the damaged Escalade. Officer Heyob could also plainly see the firearm at issue, the incriminating nature of the firearm was apparent and Officer Heyob had lawful access to the interior of the damaged Escalade. Thus, the "plain view doctrine" applies and seizure of the baggy and firearm does not violate the Fourth Amendment.

Officer Heyob observed the baggy with suspected drugs. Thus, this alone, would permit him to suspect the presence of contraband in the vehicle and immediately search the vehicle without obtaining a warrant.

Finally, the Escalade was damaged and impeding traffic. Thus, it had to be towed. Pursuant to the DPD tow policy, the items in the vehicle would have been inventoried prior to towing and the firearm and baggies would have been discovered. The inventory of the vehicle prior to towing and the towing of the vehicle does not violate Brown's Fourth Amendment rights.

**CONCLUSION**

The Government has shown that the search of Brown's vehicle and the seizure of the firearm and baggies did not violate any of Brown's Constitutional Rights. Therefore, Brown's Motion To Suppress (doc. #28) is OVERRULED.

**DONE** and **ORDERED** in Dayton, Ohio this 14th day of May, 2012.

s/Thomas M. Rose
_____
THOMAS M. ROSE
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record